UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC. d/b/a INTEGRATED SPORTS MEDIA,<br><br>**Plaintiff,**<br><br>v.<br><br>EL PUNTO MARINO RESTAURANT LLC d/b/a EL PUNTO MARINO et al.,<br><br>**Defendants.** | Civ. No. 2:20-cv-14251 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiff Innovative Sports Management Inc., doing business as Integrated Sports Media ("Plaintiff"), brings this action pursuant to the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, and the Communications Act of 1934, 47 U.S.C. § 605, for the unauthorized interception and television broadcast of a *Chile v. Peru* soccer match. The matter comes before the Court on Plaintiff's unopposed motion for default judgment. *See* Fed. R. Civ. P. 55(b)(2). For the reasons stated herein, Plaintiff's motion is **GRANTED** and Plaintiff is awarded $3,000.00 in damages pursuant to the Judgment and Order accompanying this Opinion.

I.   **FACTUAL BACKGROUND**

Plaintiff is a closed-circuit distributor of sports and entertainment programming. Aff. of Doug Jacobs ("Jacobs Aff.") ¶ 3, ECF No. 10. Plaintiff contracted with non-party Lions Sports & Media S.A. for the exclusive right to sublicense the televised broadcast of *Chile v. Peru, International Friendly Soccer Match* (the "Program") scheduled for October 12, 2018. Compl. ¶¶ 19-20, ECF No 1; Event Distrib. Agreement, Ex. A to Jacobs Aff., ECF No. 10. Plaintiff thereafter entered into sublicense agreements with commercial establishments nationwide, including in New Jersey, to broadcast the Program to the establishments' patrons. Compl. ¶ 20, ECF No 1. Plaintiff charged each establishment a fee to broadcast the Program based on the establishment's maximum capacity. Jacobs Aff. ¶ 8, ECF No. 10. Once Plaintiff received the fee and authorized an establishment to receive the Program, Plaintiff provided the establishment with the equipment or satellite coordinates necessary to electronically decode the "scrambled" or encrypted Program signal so that it could be telecast clearly. Compl. ¶¶ 24, 25, ECF No. 1.

To prosecute commercial establishments that pirate Plaintiff's programming—that is, illegally intercept and broadcast the programming without paying the required sublicense fee—Plaintiff polices its signals and hires investigators to identify and visit those establishments that broadcast the programming without authorization. Jacobs Aff. ¶¶ 5-6, ECF No. 10. On October 12, 2018, one of Plaintiff's investigators visited Defendant El Punto Marino ("El Punto Marino" or "the Restaurant"), a restaurant located in Elizabeth, New Jersey, and owned and operated by Defendant Rafael H. Herrera ("Mr. Herrera") (together, "Defendants"). Compl. ¶¶ 6-10, ECF 1; Exs. B, C, Cert. of Michael J. Peters ("Peters Cert."), ECF No. 9-1. From 9:16 P.M. to 9:29 P.M., the investigator observed the Program being displayed on two of the three wall-mounted televisions in the Restaurant while the Restaurant served food to patrons. Aff. of Eduar Cruz ("Cruz Aff."), Ex. B. to Jacobs Aff., ECF No. 10. Defendants displayed the Program without Plaintiff's authorization and without paying Plaintiff the sublicense fee. Compl. ¶¶ 28-30, ECF No. 1; Jacobs Aff. ¶ 7, ECF No. 10. The investigator estimated that the maximum capacity of the Restaurant was seventy people, and he observed approximately thirty to thirty-six people in the Restaurant while he was there. Cruz Aff., Ex. B. to Jacobs Aff., ECF No. 10. The sublicense fee for commercial establishments with Defendant's maximum capacity to receive and broadcast the Program was $1,000.00. Jacobs Aff. ¶ 8, ECF No. 10.

## II.  PROCEDURAL HISTORY

Based on the above, Plaintiff filed the Complaint in this action on October 9, 2020, alleging Defendants unlawfully intercepted and broadcasted the Program in violation of the Communications Act of 1934, 47 U.S.C. § 605 (Count I), and the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 (Count II); unlawfully interfered with Plaintiff's prospective economic advantage (Count III); and unlawfully interfered with Plaintiff's contractual relations (Count IV). ECF No. 1. El Punto Marino was served with a copy of the summons and Complaint on January 8, 2021, at its Elizabeth, New Jersey address, and Mr. Herrera was served with a copy of the summons and Complaint on January 27, 2021, at a Linden, New Jersey address. ECF Nos. 5, 6. Defendants have not answered or otherwise responded to the Complaint.

On April 29, 2021, the Clerk entered a default against Defendants at Plaintiff's request pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 8. On May 3, 2021, Plaintiff filed the instant motion for default judgment. ECF No. 9. On June 8, 2021, the Court granted Plaintiff's letter request for a thirty-day stay of the motion while the parties engaged in settlement discussions. ECF No. 13. When Plaintiff filed a letter on July 8, 2021, advising that the settlement discussions had been unsuccessful, the Court reset the deadlines for briefing the motion, but Defendants never filed an opposition, nor did they enter their appearances in this case. Plaintiff therefore seeks a judgment against them in the amount of $18,000.00 consisting of: $3,000.00 in statutory damages; $15,000.00 in enhanced statutory damages; and attorneys' fees and costs to be determined by separate application. Pl. Br. at 24, ECF No. 9-2.

## III. DISCUSSION

"Federal Rule of Civil Procedure 55(b)(2) provides for entry of a default judgment in favor of a plaintiff where a defendant has failed to plead or otherwise defend." *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014). Although "the entry of a default judgment is left primarily to the discretion of the district court," the United States Court of Appeals for the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Thus, the Court's analysis in deciding whether to grant a default judgment proceeds in various steps.

### A. Jurisdiction and Service of Process

The Court first addresses its jurisdiction, and whether service on Defendants was properly executed.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 by virtue of Plaintiff's claims under 47 U.S.C. § 605 and § 553. The Court also has personal jurisdiction over Defendants because they are domiciled in the state of New Jersey and were physically located in the state of New Jersey at the time they were served. *See* Fed. R. Civ. P. 4(k)(1). A review of the docket confirms that Plaintiff properly served a copy of the summons and Complaint on Defendants on January 8, 2021, and January 27, 2021, and that Defendants failed to file an answer or otherwise respond to the Complaint within the twenty-one-day period provided by Federal Rule of Civil Procedure 12(a)(1). *See* ECF Nos. 5, 6. The Clerk then entered a default against Defendants on April 29, 2021. Plaintiff's present motion for default judgment followed and is properly before this Court.

### B. Cause of Action

The Court next addresses whether Plaintiff has sufficiently stated a cause of action against Defendants based upon the allegations set forth in the Complaint. *See Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 536 (D.N.J. 2008). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks and citation omitted). Similarly, "defendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013).

Plaintiff brings claims pursuant to 47 U.S.C. § 605 (Count I) and 47 U.S.C. § 553 (Count II).[1] Compl. ¶¶ 27-41, ECF No. 1. Both sections prohibit and penalize the illegal interception of proprietary communications. Section 605 applies to the interception of satellite transmissions and section 553 applies to the interception of wired cable transmissions. *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 206-07 (3d Cir. 2001). Although Defendants' failure to appear in this action deprives Plaintiff of its ability to learn which method of transmission was involved and which of the two statutory sections applies, the sections "share a nearly identical remedial scheme," such that conducting an analysis with reference to both sections will result in the Court entering an appropriate judgment either way. *Joe Hand Promotions, Inc. v. Waldron*, No. 11-849 (RBK) (KMW), 2013 WL 1007398, at *1, n.2 (D.N.J. Mar. 13, 2013). Therefore, when a plaintiff seeks relief under either section, "its burden is to show that the defendant (1) intercepted a broadcast; (2) [was] not authorized to intercept the broadcast; and (3) showed the broadcast to others." *Id.* at *3 (internal quotation marks and citation omitted). A plaintiff may receive enhanced damages if it can further show that interception of the broadcast was willful and for commercial advantage or private gain. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii).

The Court is satisfied that Plaintiff has pleaded sufficient facts as to each of the three elements above. As to the first and third elements, the Complaint alleges that on October 12, 2018, Defendants intercepted the Program and exhibited the broadcast to patrons on two of the three televisions inside the Restaurant. Compl. ¶¶ 16-26, ECF No. 1. As to the second element, the Complaint alleges that Plaintiff had the exclusive rights to distribute the Program in the state of New Jersey; that Plaintiff required commercial establishments to first pay a fee and obtain authorization to broadcast the Program; and that Plaintiff had to provide authorized establishments with the necessary equipment or satellite coordinates to electronically decode the "scrambled" Program signal so that it could be telecast clearly. *Id.* ¶¶ 19-25. The foregoing, read in conjunction with the allegation that Defendants unlawfully intercepted the Program, is enough for the Court to infer that the parties did not enter into a sublicense agreement that would permit Defendants to publicly display the Program, and thus Defendants were not authorized to intercept it.

The Court is also satisfied that Plaintiff has pleaded sufficient facts to impose individual liability on Mr. Herrera. Plaintiff is required to show that Mr. Herrera had "the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity," as well as "a direct financial interest in the violation, *i.e.*, financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *J & J Sports Prods., Inc. v. Old Bailey Corp.*, No. 18-8829 (KSH) (CLW), 2019 WL 4267856, at *2 (D.N.J. Sept. 9, 2019) (quoting *J & J Sports Prods., Inc. v. Ramsey*, 757 Fed. App'x 93, 95 (3d Cir.

---

[1] As Plaintiff is not seeking judgment or relief on its claims for unlawful interference with its prospective economic advantage (Count III) or unlawful interference with its contractual relations (Count IV), the Court need not evaluate their legal sufficiency.

2018)) (internal quotation marks omitted). The Complaint alleges, and Plaintiff has supplied supporting public records from the state of New Jersey, that Mr. Herrera is the owner, registered agent, license holder, and managing member of El Punto Marino. Compl. ¶¶ 7-10, ECF No. 1; Exs. B, C, Peters Cert., ECF No. 9-1. Plaintiff therefore had the right and ability to supervise El Punto Marino's activities and maintain a financial interest in attracting patrons by broadcasting the Program. *See Old Bailey Corp.*, 2019 WL 4267856, at *5-6 (finding personal liability where individual defendant was an officer and license holder of the commercial establishment and disclosed his ownership interests on the liquor license); *Joe Hand Promotions, Inc. v. Batra*, No. 15-5863 (JMV), 2017 WL 838798, at *1, n.1 (D.N.J. March 2, 2017) (finding personal liability where individual defendant was an "officer, director, shareholder and/or principal" of the commercial establishment and "had control over the activities occurring within [it]").

Lastly, the Court is satisfied that Plaintiff has sufficiently shown Defendants' actions were willful, as the Complaint alleges the Program was electronically coded or "scrambled" and could not have been received, "unscrambled," and telecast clearly without Defendants taking affirmative steps to do so. Compl. ¶¶ 24-25, ECF No. 1. Indeed, Plaintiff certifies that its programming cannot be mistakenly or accidentally intercepted. Jacobs Aff. ¶ 9, ECF No. 10.

### C. Three-Factor Analysis

Having determined the Complaint alleges a viable cause of action against Defendants, the Court considers whether entry of default judgment is appropriate by making "explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

As to the first factor, Defendants have not filed an answer, and it is not evident from the record that Defendants have any cognizable defense to Plaintiff's allegations. With respect to the second factor, Plaintiff will be prejudiced absent a default judgment because it will have no alternative means of vindicating its claims against Defendants. *Waldron*, 2013 WL 1007398, at *4; *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. 11-624 (JBS) (JS), 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). And as to the third factor, "Defendants' failure to respond permits the Court to draw an inference of culpability on their part." *Waldron*, 2013 WL 1007398, at *4; *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *4. The three factors therefore weigh in favor of entering default judgment against Defendants. The Court will grant Plaintiff's motion.

### D. Damages

The remaining question is the appropriate damages to award.

47 U.S.C. § 553 and § 605 both provide for an award of statutory damages. Under Section 553, the Court may award statutory damages between $250 to $10,000, while under Section 605, the Court may award statutory damages between $1,000 to $10,000. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II). Under both statutes, the actual amount awarded lies within the sound discretion of the Court and, taking all relevant circumstances into account, is an amount within the statutory range that the Court considers just. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II); *see also Innovative Sports Management, Inc. v. Cortez*, No. 19-12047 (KM), 2020 WL 882131, at *4 (D.N.J. Feb. 24, 2020). If the unauthorized interception of the communications was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the Court has discretion to award enhanced damages, increasing the statutory award range to $50,000 under Section 553 and $100,000 under Section 605. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii); *see also Waldron*, 2013 WL 1007398, at *5.

Plaintiff concedes that it may not recover under both sections for a single violation and elects to recover under Section 605. Pl. Br. at 4, n.1, ECF No. 9-2. Plaintiff seeks $3,000.00 in statutory damages and $15,000.00 in enhanced damages for Plaintiff's willful interception, and "submits that these amounts are necessary to serve the dual purposes of compensating Plaintiff and functioning as a deterrent" to Defendants and other commercial establishments. *Id.* at 10.

### 1. Statutory Damages

With respect to statutory damages, Plaintiff seeks $3,000.00, which is treble the $1,000.00 commercial licensing fee that Plaintiff would have charged a commercial establishment of Defendant's capacity (approximately seventy people) to lawfully broadcast the Program. Pl. Br. at 16, ECF No. 9-2; Jacobs Aff. ¶ 8, ECF No. 10. In the absence of an established formula for determining the appropriate amount of statutory damages to be awarded, Courts in this District generally award statutory damages that approximate actual damages—that is, the licensing fee. *See, e.g., G & G Closed Cir. Events, LLC v. Don Tequila Bar & Grill L.L.C.*, No. 19-00084 (RMB), 2020 WL 133033, at *3 (D.N.J. Jan. 13, 2020) (collecting cases). Still, other Courts have recently awarded statutory damages that treble the commercial licensing fee. *See, e.g., J & J Sports Prods., Inc. v. Royal N, Inc. et al.*, Civil Action No. 2:18-cv-13872-CCC-JBC, Judgment and Order (June 18, 2019), ECF No. 11; *J & J Sports Prods., Inc. v. Pimms Bar and Restaurant, LLC et al.*, Civil Action No. 2:18-cv-8817-SDW-SCM, Judgment and Order (Mar. 18, 201), ECF No. 19. This Court's approach, however, has been to award statutory damages in excess of the licensing fee alone, but not as high as treble damages, and explained its rationale for doing so in a decision granting default judgment in *J & J Sports Prods., Inc. v. Tribiri-Tabara, LLC*, a factually similar consolidated matter:

> Here, both sets of Defendants could have purchased rights to broadcast the [Program] for $1,800.00. However, the court finds that amount insufficient to approximate Plaintiff's actual damages. Defendants' conduct injures Plaintiff beyond the actual licensing fee, as unlicensed public broadcasting severely undercuts Plaintiff's ability to market its *exclusive* rights. Put differently, [commercial establishments] will be less willing to pay licensing fees to attract pay-per-view watchers when unauthorized venues are also showing an event at no additional cost. Without being able to eliminate piraters, Plaintiff's product is worth less to its customers. Therefore, the Court considers a statutory damages award of $3,600 "just."

No. 18-13867, No. 18-13918, 2019 WL 2754955, at *3 (D.N.J. July 2, 2019), (internal citations omitted) (emphasis in original); *see also Joe Hand Promotions, Inc. v. Ballinrobe Dev., Inc.*, No. 17-1294 (WJM), 2017 WL 2656020, at *3 (D.N.J. June 20, 2017) (awarding $1,800.00 in statutory damages, which included the $900 sublicense fee and an additional $900 for loss of goodwill); *Joe Hand Promotions, Inc. v. Cerreto*, No. 13-7647 (WJM), 2014 WL 4612101, at *5 (D.N.J. Sept. 15, 2014) (awarding $1,950.00 in statutory damages, which included the $900 sublicense fee, $150 in ill-gotten profits from food and beverage sales, and $900 for loss of goodwill and erosion of plaintiff's business model).

The Court will apply this same rationale here, and find $2,000.00, which is double the $1,000.00 sublicense fee Defendants would have paid to Plaintiff, to be a just statutory damages award.

### 2. Enhanced Damages

With respect to enhanced damages, Plaintiff certifies that its programming cannot be mistakenly or accidently intercepted—Defendants would have had to take affirmative steps to do so. Jacobs Aff. ¶¶ 9-11, ECF No. 10. Moreover, the Court may infer that since the Program was broadcast at El Punto Marino, a commercial establishment, Defendants' actions were taken for commercial advantage or pecuniary gain. *J & J Sports Prods., Inc v. Z & R Corp.*, No. 19-12189 (KSH), 2020 WL 4529995, at *3 (D.N.J. Aug. 6, 2020) (citing *Waldron*, 2013 WL 1007398, at *3). Plaintiff is therefore entitled to enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).

Courts in this district consider five factors when determining the appropriate amount of an enhanced damages award: (1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast. *Z & R Corp.*, 2020 WL 4529995, at *3 (quoting *Batra*, 2017 WL 838798, at *2).

In this case, there is no evidence that Defendants have previously intercepted and broadcasted unauthorized programming, charged a premium on food or drink or collected a cover charge for the Program, advertised the Program, or reaped substantial profits from broadcasting it to patrons. *See* Cruz Aff., Ex. B. to Jacobs Aff., ECF No. 10. Nevertheless, the interception was willful and done for the purpose of private financial gain. While the Court is mindful of the need to deter future abuses not only by Defendants but also by similarly situated commercial establishments who may perceive a lack of consequences to engaging in this type of piracy, it will not award Plaintiff the $15,000.00 requested. The Court will award Plaintiff an additional $1,000.00 in enhanced damages. This brings the total damages owed to Plaintiff by Defendants to $3,000.00

### E. Attorneys' Fees and Costs

Both sections 553 and 605 direct the Court to award attorneys' fees and costs to an aggrieved party who prevails on its claim. 47 U.S.C. § 553(c)(2)(C), 47 U.S.C. § 605(e)(3)(B)(iii) (providing for recovery of "full costs, including . . . reasonable attorneys' fees"). Plaintiff's request for thirty days to file an application for attorneys' fees and costs pursuant to Local Civil Rules 54.1 and 54.2 is therefore **GRANTED**. Plaintiff shall file such application within thirty days after entry of this Opinion.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment, ECF No. 9, is **GRANTED**. Defendants shall pay Plaintiff $3,000.00 pursuant to the accompanying Judgment and Order.

WILLIAM J. MARTINI, U.S.D.J.

**Date: September 9, 2021**

8